**ESCROW DISBURSEMENT INSURANCE AGENCY, INC., Plaintiff,**

v.

**AMERICAN TITLE AND INSURANCE COMPANY, INC., et al., Defendants.**

**No. 76–6109–CIV–EPS.**

United States District Court,
S.D. Florida,
Civil Division.

Nov. 9, 1982.

Rod Tennyson, Ombres, Powell, Tennyson & St. John, P.A., West Palm Beach, Fla., Coleman R. Rosenfield, Hollywood, Fla., David E. Graham, Graham, Hodge & Larson, P.A., Fort Lauderdale, Fla., Gerald F. Richman, Floyd, Pearson, Stewart, Richman, Greer & Weil, P.A., Miami, Fla., Stephen Rubin, Holland & Knight, Washington, D.C., for plaintiff.

Patrick A. Barry, English, McCaughan & O'Bryan, Fort Lauderdale, Fla., John G. Graybeal, Foley, Lardner, Hollabaugh & Jacobs, Washington, D.C., for Lawyers Title.

Delbridge L. Gibbs, Marks, Gray, Conroy & Gibbs, P.A., Jacksonville, Fla., Joseph W. Gelb, Weil, Gotshal & Manges, New York City, for Title & Trust Co. of Florida.

R.L. Edwards, Kimbrell, Hamann, Jennings, Womack & Carlson, Miami, Fla., for Commonwealth Land Title Ins. Corp.

Theodore C. Taub, Taub & Williams, Tampa, Fla., for Pioneer Nat.

William H. Adams, III, Mahoney, Hadlow & Adams, Jacksonville, Fla., for Title Ins. Co. of Minnesota.

## ORDER GRANTING PLAINTIFF'S MOTION TO EXCLUDE BOBER REPORT AND MEMORANDUM OPINION

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Plaintiff's Motion to Exclude from Evidence at Trial the Report and Recommendations of Irving S. Bober and the Order of the Insurance Commissioner adopting the report and recommendations. Having reviewed the record in this cause and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that the Motion is GRANTED.

### FACTS

The case at bar is an antitrust action that was filed March 16, 1976. The object of this motion *in limine* is to exclude from evidence at trial a document that was issued on September 27, 1978. The document in question, the "Bober Report", was issued by the presiding hearing officer, Irving S. Bober, following a nonadversarial public hearing, conducted by the Office of the Treasurer, Insurance Commissioner, State of Florida, pursuant to *Fla.Stat.* § 624.324. Mr. Bober, an attorney with the Florida Department of Insurance, issued 61-page report and recommendations. The report followed a two-day public hearing that generated a transcript of more than 500 pages. The Insurance Commissioner issued his order adopting the report on December 18, 1978. *Fla.Stat.* § 624.324 provides for hearings to be held by the Department of Insurance whenever required by law or deemed otherwise necessary.

## ISSUES

In this case, a hearing was requested by Escrow Disbursement Insurance Agency, Inc. (EDI) to resolve three issues.

The first issue was whether "escrow letters" or "insured closing letters" issued by title insurance companies in the state of Florida are prohibited by *Fla.Stat.* § 627.-786. This statute provides that "[n]o insurer shall transact title insurance and any other kind of insurance in this state."

The second issue was whether title insurance underwriters branches, or agents representing that they cover the "gap", or hiatus, in title information between the time that the title binder or commitment is issued and the time of the recording of the documents creating the estate to be insured, are transacting title insurance on a casualty basis or casualty insurance as prohibited by *Fla.Stat.* § 627.784. This statute provides that "[n]o title insurance policy or guarantee of title shall be issued upon a casualty basis ..." The term "casualty basis" as used in this section means the issuance of a title insurance policy or guarantee of title with disregard to the possible existence of adverse matters or defects of title.

The third issue was whether title insurance underwriters, agents, or branches are guilty of offering a special favor, advantage, or monetary consideration as an inducement to sell title insurance as prohibited by *Fla.Stat.* § 626.9541(8)(c)(1), when they offer immediate disbursement of real estate transaction proceeds without pursuing one of the three alternative disclosure and protection methods provided in the Attorney General's Declaratory Statement # 75–10031. All three of these issues were resolved in favor of the title insurance underwriters, agents, and branches by the hearing examiner.

Defendant title insurance companies have urged the admission into evidence of this report for the following reasons: (1) The document is relevant because it destroys the premise underlying the EDI product and, therefore, goes to minimizing damages and implies good motive on the part of the Defendants. (2) The document is not hear-

say. (3) The probative value of the document is not outweighed substantially by its prejudicial effect. (4) The document is admissible under the Federal Rules of Evidence (FRE) 106 for the purpose of completeness. This is because the plaintiff intends to introduce three similar documents: a declaratory statement issued by the Attorney General of Florida, a General Information Bulletin issued by the Florida Department of Insurance, and a "white paper" issued by the Florida Real Estate Commission. (5) Even if the document is hearsay, it is admissible for a valid, non-hearsay purpose. That purpose is to show the official government position that would affect the marketability of the plaintiff's product. The report would have an effect on the demand for the EDI policy. The report shows that the EDI policy never achieved acceptance in the marketplace because it was based upon David Graham's misconstruction of the applicable law and misperception of the market for his product. The document is also admissible to show that the defendants were not acting contrary to official warnings, the law or industry custom in issuing their insured closing letters. (6) Even if the report is hearsay, it is admissible under FRE 803(8)(C) as a public record or report. (7) The document is a legislative fact and therefore entitled to be judicially noticed. (8) There is a circumstantial guarantee of trustworthiness of the document.

Plaintiff argues that the report should be excluded for the following reasons: (1) The report constitutes inadmissible hearsay under FRE 801 and 802. (2) It is not a public record under FRE 803(8)(C) because there are no factual findings. Any factual findings that there might be are only preliminary. The administrative hearing lacked any procedural safeguards. The report is inherently untrustworthy because it was co-authored by an attorney who represents one of the defendants in this proceeding. This attorney wrote part of the report when the current litigation was already pending. (3) The report is not relevant under FRE 401 and 402 because it was written more than three years after EDI began operation. (4)

The report is biased and will unduly prejudice and mislead the jury as prohibited by FRE 403. (5) The attorney who participated in the writing of the Bober Report may have to be called as a witness at trial to aid in assessing the credibility of the report. This could cause ethical problems under the Florida Code of Professional Responsibility (FCPR) DR 5–102(B) wherein an attorney is prohibited from representing a client when it is likely that he will be called as a witness to testify about more than a mere formality. (6) The report is made up of hearsay, multiple hearsay, confidential communications, and *ex parte* information. This material is all inadmissible. (7) The nonhearsay use of the report is extremely limited because the report was issued more than three years after the plaintiff began marketing its product. (8) FRE 106 does not apply to situations such as this. The other documents that defendants refer to as requiring the Bober Report for completeness are complete in themselves within the meaning of FRE 106. (9) There is no evidence that the other documents, written in 1975, are tainted, and their proximity in time to the advent of the EDI product makes them separate from the Bober Report in regard to completeness.

■ This Court agrees that the Bober Report is, in large part, hearsay of a nature that renders it inadmissible. Moreover, this Court finds that the non-hearsay use of the report to imply good motive on the part of the Defendants is so slight as to be insignificant because of the timing of the hearing.

■ The report appears to have been co-authored by one of the defense counsel in this case. Although the Court intends no implication of impropriety on account of this fact, it nonetheless is constrained to find that such a document is not within the public records exception under the criteria espoused in case law cited hereafter.

■ This report was prepared two years after the filing of the instant lawsuit. The implication is strong that it was prepared with the pending litigation in mind. Thus, even if the report was not hearsay; or, if

hearsay, was admissible under the public records exception, it is still inadmissible under FRE 403 as it is unduly prejudicial.

■ Further, the rule of completeness does not apply to this case so as to compel the admission of this document. The other documents referred to (a declaratory statement issued by the Attorney General of Florida, a General Information Bulletin issued by the Florida Department of Insurance, and a "white paper" issued by the Florida Real Estate Commission) are complete in themselves within the meaning of the rule subject to admissibility.

In *Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,* 505 F.Supp. 1125 (E.D.Penn.1980), the court held that "[t]he text of Rule 803(8)(C) and the Advisory Committee note, make plain that broad leeway is accorded to the trial judge to exclude 803(8) material where the sources of information and other circumstances indicate lack of trustworthiness." *Id.* at 1146. The court goes on to approve the *in limine* motion as a vehicle for a determination of the admissibility of a document under 803(8)(C). *Id.*

The Advisory Committee suggests, in a note following the text of Rule 803, four factors in evaluating a document's admissibility "(1) the timeliness of the investigation...; (2) the special skill or experience of the official...; (3) whether a hearing was held and the level at which conducted...; (4) possible motivation problems...." Since the Bober investigation was not begun until 1978, the hearing was on a state level, and part of the report was written by one of the defense counsel, the report appears inadmissible under these criteria.

The court in *Zenith Radio* relied upon the above-mentioned factors and formulated seven more of its own. These additional factors were stated as follows:

(1) The finality of the agency findings, *i.e.,* the state of the proceedings at which the findings were made (whether they are subject to subsequent proceedings or *de novo* review), and the likelihood of modification or reversal of the findings.

(2) The extent to which the agency findings are based upon or are the product of proceedings pervaded by receipt of substantial amounts of material which would not be admissible in evidence (*e.g.* hearsay, confidential communications, *ex parte* evidence), and the extent to which such material is supplied by persons with an interest in the outcome of the proceeding. (3) If the findings are products of hearings, the extent to which appropriate safeguards were used (Administrative Procedure Act, Due Process), and the extent to which the investigation complied with all applicable agency regulations and procedures. (4) The extent to which there is an ascertainable record on which the findings are based. (5) The extent to which the findings are a function of an executive, administrative, or legislative policy judgment (as opposed to a factual adjudication) or represent an implementation of policy. (6) The extent to which the findings are based upon findings of another investigative body or tribunal which is itself vulnerable as the result of trustworthiness evaluation. (7) Where the public report purports to offer expert opinion, the extent to which the facts or data upon which the opinion is based are of a type reasonably relied upon by experts in the particular field. *Id.* at 1147.

Again, these factors compel the exclusion of the Bober Report.

Pursuant to an evaluation of the Bober Report under the above-mentioned criteria, it is the judgment of this Court that the report is inadmissible for any non-hearsay purposes as it is far more prejudicial than probative in that regard. The report is also inadmissible for hearsay purposes, as it does not qualify under any exception.

It is not the intent of this Court, however, in issuing this Order to prohibit the Defendants from cross-examining Mr. Graham about the report as it relates to his state of mind during his earlier actions in marketing EDI policies.